UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TERRY LYNN OWENS,

        Plaintiff,                              Hon. Richard Alan Enslen

v.                                              Case No. 1:07 CV 212

INGHAM, COUNTY OF, et al.,

        Defendants.

_____/


**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants' Motion to Dismiss and/or for Summary Judgment. (Dkt. #6). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted** and Plaintiff's action dismissed.


**BACKGROUND**

The following allegations are contained in Plaintiff's complaint. (Dkt. #1). Plaintiff was incarcerated in the Ingham County Jail from September 28, 2003, to July 25, 2004. On May 24, 2004, while working as a trustee, Plaintiff and three other inmates were instructed to "move a large wooden desk from inside the office area to outside the jail." While they were performing this task, the dolly on which the desk was resting "tipped over" and the desk fell on Plaintiff's left knee.

Plaintiff was examined by "the jail nurse" who instructed that he be transported to the Ingham Regional Medical Center (IRMC) for further examination. According to Plaintiff, he was informed by doctors at the IRMC that his "knee bones had separated and that [he] had torn ligaments."

Plaintiff asserts that he underwent surgery on February 22, 2006, the results of which revealed that his knee "was completely destroyed." Plaintiff's doctor informed him that his knee injury "would last for the rest of [his] life." Plaintiff asserts that he "never had any trouble with [his] knee" prior to this incident.

Plaintiff initiated the present action against Ingham County, Ingham County Sheriff Gene Wigglesworth, and unidentified "John/Jane Doe Defendants." Plaintiff alleges that Defendants (a) forced him to work under unsafe conditions and (b) failed to provide him with proper medical treatment in violation of his Eighth Amendment right to not be subjected to cruel and unusual punishment.

## **SUMMARY JUDGMENT STANDARD**

In reviewing a motion for summary judgment, the Court must confine itself to the narrow questions of whether there exist "no genuine issue[s] as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a Rule 56 motion, the Court cannot try issues of fact, but is empowered to determine only whether there exist issues in dispute to be decided in a trial on the merits. *See Perez v. Aetna Insurance Co.*, 96 F.3d 813, 819 (6th Cir. 1996). The crux of the motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

A motion for summary judgment requires the Court to view "inferences to be drawn from the underlying facts...in the light most favorable to the party opposing the motion." *Matsushita Electric Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The opponent, however, has the burden to

show that a "rational trier of fact [could] find for the non-moving party [or] that there is a 'genuine issue for trial.'"  *Historic Preservation Guild of Bay View v. Burnley*, 896 F.2d 985, 993 (6th Cir. 1989).

As the Sixth Circuit has recognized, the Supreme Court has encouraged the granting of summary judgments, as such may be "an appropriate avenue for the 'just, speedy and inexpensive determination' of a matter."  *Kutrom v. City of Center Line*, 979 F.2d 1171, 1173 (6th Cir. 1992). Consistent with this concern for judicial economy, "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient."  *Anderson*, 477 U.S. at 252. Furthermore, mere allegations do not suffice.  *See Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989) ("the party with the burden of proof at trial is obligated to provide concrete evidence supporting its claims and establishing the existence of a genuine issue of fact").

**I.      Exhaustion**

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516, 524 (2002).  Prisoners are no longer required to demonstrate exhaustion in their complaints.  *See Jones v. Bock*, 127 S.Ct. 910, 921 (2007).  Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing.  *Id.*

With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules."  *Woodford v. Ngo*, 126 S.Ct. 2378, 2386-87 (2006).  In *Bock*, the Court reiterated that:

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 127 S.Ct. at 922-23.

Defendants assert that Plaintiff's complaint must be dismissed because Plaintiff failed to utilize the jail's established grievance procedure. Upon his arrival at the Ingham County Jail, Plaintiff was provided with a copy of the Ingham County Correctional Center Inmate Guide. (Dkt. #7, Exhibits 10 and 14). With respect to an inmate's right to file grievances, the Guide provides that:

> If you feel that you have been treated unfairly and wish to file a grievance, use an inmate request form to explain your complaint and forward it to the jail administrator. A representative of the jail administration will contact you to pursue the issue.

(Dkt. #7, Exhibit 10).

The Guide does not articulate any specific time period within which a grievance must be filed. Plaintiff asserts that on November 22, 2005, he sent a grievance regarding this matter to the "Ingham County Jail Administrator." Defendants have submitted no evidence to the contrary. Moreover, Defendants have submitted no evidence that Plaintiff's grievance was rejected for failure to comply with the jail's grievance procedure. While the Court recognizes that this grievance may appear to have been untimely filed, the fact is that the Inmate Guide does not instruct prisoners that grievances must be filed within a specific period of time. Instead, the Guide simply instructs prisoners to complete the requisite form and forward it to the jail administrator for resolution. Plaintiff asserts that he complied with this requirement and Defendants have submitted no evidence to the contrary.

Accordingly, the Court concludes that Defendants have failed to satisfy their burden of demonstrating that Plaintiff failed to properly exhaust the claims in his complaint.

**II.**         **Plaintiff's Eighth Amendment Claims**

Reading Plaintiff's complaint in conjunction with his response to the present motion, it is clear that Plaintiff is asserting two separate and distinct Eighth Amendment claims. Plaintiff first asserts that Defendants violated his constitutional rights by "providing an unsafe work condition." Plaintiff further asserts that Defendants must be held liable "for the delay in getting the necessary medical diagnosis and the delay in getting the required treatment."

A.         Working Conditions

As noted above, Plaintiff asserts that the desk he was helping move fell on his left knee when the furniture dolly on which the desk was resting "tipped over." Plaintiff alleges that the dolly did not have safety straps. Plaintiff asserts that Defendants' failure to provide the work crew with a furniture dolly equipped with safety straps violated his Eighth Amendment right to be free from cruel and unusual punishment.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The analysis by which Defendants' conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. In this respect, Plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. With respect to the objective prong of the analysis, contemporary standards of decency determine whether conditions of confinement are cruel and unusual. *See Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). Contemporary

standards of decency are violated only by "extreme deprivations" which deprive the prisoner of the "minimal civilized measure of life's necessities." *Hadix*, 367 F.3d at 525 (quoting *Hudson v. McMillan*, 503 U.S. 1, 9 (1992)).

If the objective test is met, the Court must then determine whether Defendants acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. In other words, was the defendant deliberately indifferent to inmate health or safety. *Id.* However, the Eighth Amendment is not implicated where prison officials simply acted negligently. *See Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). In sum, to establish that Defendants acted with deliberate indifference, Plaintiff must "present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (quoting *Farmer*, 511 U.S. at 829, 847).

In the context of prison work assignments, courts recognize that prison officials run afoul of the Eighth Amendment only where they "knowingly compel convicts to perform physical labor which is beyond their strength, or which constitutes a danger to their lives or health, or which is unduly painful." *Alexander v. Barefield*, 2007 WL 1655383 at *5 (N.D. Fla., June 7, 2007) (citations omitted); *Choate v. Lockhart*, 7 F.3d 1370, 1374 (8th Cir. 1993) (same); *Brown v. Richmond County Correctional Institution*, 2006 WL 1431488 at *2 (S.D.Ga., May 22, 2006) (same).

Plaintiff has submitted no evidence from which a reasonable person could conclude that moving a desk (with the assistance of three other inmates) with a furniture dolly (albeit one without safety straps) was beyond Plaintiff's strength, subjected Plaintiff to undue pain, or otherwise risked his life or health. In fact, as at least one court has recognized, requiring inmates to move furniture with a

furniture dolly that was not equipped with safety straps constitutes, at most, negligence. *See Stephens v. Johnson*, 83 F.3d 198, 200-01 (8th Cir. 1996). Accordingly, the Court recommends that Defendants be granted summary judgment as to this particular claim.

B. Delay in Medical Treatment

Plaintiff asserts that Defendants failed to timely treat the injury he suffered to his left knee, thereby violating his Eighth Amendment right not to be subjected to cruel and unusual punishment.

The Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06. The familiar two-step analysis described above applies to this particular claim as well. Plaintiff must first establish that he was "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. If this hurdle is overcome, Plaintiff must then establish that Defendants possessed sufficiently culpable states of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.*

In other words, Plaintiff must establish that Defendants "actually knew" that he "faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it." *Howard v. Calhoun County*, 148 F.Supp.2d 883, 888-89 (W.D. Mich. 2001) (citing *Farmer*, 511 U.S. at 847). To establish that Defendants acted with the requite culpability, Plaintiff must establish

either that Defendants possessed actual knowledge that he experienced a serious medical need or by demonstrating that the circumstances clearly indicated that he was experiencing a serious medical need. *See Blackmore v. Kalamazoo County*, 390 F.3d 890, 895-96 (6th Cir. 2004) (citation omitted).

However, the Eighth Amendment is not a vehicle by which to constitutionalize state tort law. To the extent, therefore, that Plaintiff merely disagrees with Defendants' treatment decisions or claims that such constitute malpractice, Plaintiff fails to state a claim of constitutional magnitude. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995) (if prison officials responded reasonably to a substantial risk to an inmate's health or safety, they may avoid liability – even if the harm ultimately was not averted).

Moreover, where a prisoner claims that medical treatment was merely delayed (rather than denied), the court may need to evaluate the effect of the alleged delay in treatment. *See Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001). In *Napier*, the court held that "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Id.* (citation omitted).

The Sixth Circuit subsequently clarified its *Napier* holding in *Blackmore v. Kalamazoo County*, 390 F.3d 890 (6th Cir. 2004). In *Blackmore*, the court held that where a prisoner experiences "an obvious need for medical care that laymen would readily discern as requiring prompt medical

attention" the prisoner is not required to submit medical evidence demonstrating that he suffered an ill effect resulting from a delay in treatment. *Id.* at 898. However, if the prisoner's claim is based on the alleged failure to adequately treat an impairment or where the prisoner was suffering from a "non-obvious" impairment, the prisoner must comply with *Napier* and present medical proof demonstrating that the alleged delay in treatment caused a detrimental effect. *Id.*

As noted, Plaintiff does not assert that he was *denied* treatment, but rather he alleges that Defendants improperly *delayed* providing him with the medical treatment his condition required. Specifically, Plaintiff does not assert that Defendants delayed in providing him treatment in general, but simply that they unduly delayed in performing the surgery that his condition allegedly necessitated.

The medical evidence submitted by the parties reveals the following. As previously noted, Plaintiff was injured on May 24, 2004. At 12:20 p.m. that same day Plaintiff was examined by medical staff at the Ingham County Jail. (Dkt. #1). Plaintiff was given pain medication and crutches. His knee was wrapped and he was taken to the emergency department of the IRMC where Plaintiff was given additional medication and instructed not to put weight on his left knee for several days. He was further instructed to return if he experienced increased pain, redness, or a change in symptoms.

Plaintiff was examined on June 1, 2004, at which time he was scheduled to participate in an MRI examination of his left knee. Plaintiff was examined again on June 22, 2004, and June 30, 2004. On July 8, 2004, Plaintiff participated in an MRI examination of his left knee, the results of which revealed (1) osteoarthritis; (2) a tear of the posterior horn of the medial meniscus; and (3) a small amount of joint effusion. *Id.* The results of this examination were not communicated to Plaintiff's care providers prior to his July 25, 2004 release from the Ingham County Jail. (Dkt. #1; Dkt. #7, Exhibit 1).

Plaintiff was again incarcerated in the Ingham County Jail from September 11, 2004, through September 15, 2004. (Dkt. #7, Exhibit 3). During this short period of time, Plaintiff was examined by medical professionals on three occasions. (Dkt. #1; Dkt. #7, Exhibits 4-5). Plaintiff was returned to the Ingham County Jail on November 15, 2004. (Dkt. #7, Exhibit 6). Plaintiff was examined by medical professionals on November 15, 2004, and November 18, 2004. (Dkt. #1). On November 22, 2004, medical personnel at the Ingham County Jail contacted the IRMC informing them that they had not yet received the results of Plaintiff's MRI examination. The results of Plaintiff's MRI examination were received two days later, at which time the determination was made to refer Plaintiff to an orthopedic surgeon. *Id.* On December 3, 2004, Plaintiff was transferred to the custody of the Michigan Department of Corrections (MDOC). (Dkt. #7, Exhibits 6-7). On December 7, 2004, a nurse employed at the Ingham County Jail forwarded to the MDOC the results of Plaintiff's MRI examination. (Dkt. #7, Exhibit 7). The nurse further informed the MDOC that Plaintiff had been scheduled to be examined by an orthopedic surgeon, but "was released prior to facilitating that referral." *Id.* On February 22, 2006, more than one year later, Plaintiff underwent surgery on his *right* knee. (Dkt. #1).

As previously noted, Plaintiff's claim is not that his requests for medical treatment in general were delayed. As the evidence clearly reveals, Plaintiff was provided prompt and ongoing medical care during his various stays in the Ingham County Jail. Rather, Plaintiff asserts that because Defendants did not more quickly diagnose the extent of his knee injury, his subsequent surgery was improperly delayed.

First, while Plaintiff has couched his claim in Eighth Amendment terms, the essence of Plaintiff's claim is that he received negligent or sub-standard care while incarcerated in the Ingham County Jail. As discussed above, however, the Eighth Amendment is simply not implicated by claims

of malpractice or negligence. However, even if the Court interprets Plaintiff's claim as a delay in medical treatment claim implicating the Eighth Amendment the result is the same.

While a layman could have been expected to discern that Plaintiff's knee impairment required some type of treatment by a medical professional, the record contains no evidence from which a reasonable person could conclude that a layman would have known that Plaintiff's knee impairment required surgery. Plaintiff, therefore, must present evidence that the alleged delay he experienced in obtaining surgery caused him to suffer a detrimental effect. Plaintiff has presented no such evidence.

The evidence that Plaintiff relies on in this respect is the operative report regarding the surgery performed on his *right* knee on February 22, 2006. *Id.* Plaintiff asserts that the surgery referenced in this report was actually performed on his left knee. While the Court certainly recognizes that such mistakes can occur, Plaintiff's argument that the operative report contains a typographical error is less than persuasive when considering that the report specifically references Plaintiff's "right" knee or lower extremity four times. More importantly, Plaintiff has submitted no evidence calling into question the accuracy of this operative report or otherwise suggesting that surgery was ever performed on his left knee. Thus, Plaintiff cannot establish that he suffered a detrimental effect as a result of Defendants' alleged delay in providing him medical treatment. However, even if the Court assumes that Plaintiff underwent surgery on his left knee on February 22, 2006, as Plaintiff asserts, his claim still fails.

As discussed above, Plaintiff received medical treatment immediately after suffering his left knee injury. Plaintiff's condition did not improve with treatment and, therefore, Plaintiff's care providers scheduled Plaintiff to participate in an MRI examination, which was performed on July 8, 2004. Plaintiff was released from the Ingham County Jail before the results of this examination could

be communicated to Plaintiff's care providers at the Ingham County Jail. Plaintiff was briefly incarcerated in the Ingham County Jail for four days in September 2004, during which time the results of Plaintiff's MRI were not communicated to jail officials. Plaintiff was returned to the Ingham County Jail on November 15, 2004. The results of Plaintiff's MRI examination were obtained by jail officials on November 24, 2004, at which time Plaintiff was referred to an orthopedic surgeon for further examination. However, Plaintiff was transferred to the custody of the MDOC before he could be examined by the orthopedic surgeon.

The record fails to support Plaintiff's claim that Defendants unduly delayed providing him with medical treatment. He received prompt treatment following his injury. When his condition did not improve he participated in an MRI examination. As soon as the results of this examination were communicated to jail officials, Plaintiff was referred to an orthopedic surgeon for further examination. Defendants cannot be held responsible for Plaintiff's failure to seek medical treatment following his July 25, 2004, and September 15, 2004, releases from the Ingham County Jail. Likewise, Defendants cannot be held responsible for any delays in treatment Plaintiff experienced following his transfer to MDOC custody on December 3, 2004.

Plaintiff asserts that Defendants improperly delayed in performing surgery on his left knee. The medical record developed during Plaintiff's stay in the Ingham County Jail contains no evidence that Plaintiff's knee impairment required surgery. Presumably, such a determination was rendered by an orthopedic surgeon. Defendants referred Plaintiff for an examination by an orthopedic surgeon, however, before this examination could be conducted Plaintiff was transferred to the custody of the MDOC.

The Court fails to discern how Defendants can be held liable for allegedly delaying to administer medical treatment (surgery) which they were never informed Plaintiff required. To the extent that Plaintiff suffered a delay in obtaining surgery to treat his left knee, such delay occurred after his transfer to MDOC custody, as his alleged left knee surgery did not occur until more than one year later. However, none of the individuals responsible for Plaintiff's care following his transfer to MDOC custody are defendants in this case. Accordingly, for the reasons discussed herein, the Court recommends that Defendants are entitled to summary judgment as to this particular claim.

## **CONCLUSION**

As discussed herein, the Court recommends that Defendants' Motion to Dismiss and/or for Summary Judgment, (dkt. #6), be **granted** and Plaintiff's action dismissed.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: January 7, 2008         /s/ Ellen S. Carmody
                              ELLEN S. CARMODY
                              United States Magistrate Judge